Filed 10/15/20  P. v. Nevarez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. EPIFANIO NEVAREZ, Defendant and Appellant. | B299571 (Los Angeles County Super. Ct. No. PA089364) |

Appeal from a judgment of the Superior Court of Los Angeles County, Hayden Zacky, Judge.  Convictions affirmed and remanded for resentencing.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and David E. Madeo, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Epifanio Nevarez appeals from the judgment entered after the trial court, following a court trial, found he committed multiple sexual offenses against his step-granddaughter, Krystal C., beginning when she was nine years old. Nevarez contends the court erred in denying his pretrial motion to dismiss the charges as an impermissible multiple prosecution under Penal Code section 654.[1] He argues section 654 barred the People from bringing the charges because, despite having the necessary evidence, they did not bring them five years earlier when they prosecuted him for—and he pleaded no contest to—sexually abusing Krystal's 13-year-old friend, Daisy O. Nevarez also contends that, on one of his convictions in this case, the court erroneously sentenced him under the one strike law, section 667.61, and the Habitual Sexual Offender law, section 667.71. We agree the court erred in sentencing Nevarez on the conviction in question, but disagree section 654 barred this prosecution. Therefore, we vacate the challenged sentences, direct the trial court to resentence Nevarez, and affirm in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Nevarez Forms a Sex Club*

In the summer of 2012, when Krystal and her classmate Daisy were 13 years old, Krystal invited Daisy to go camping with her family. On this trip Krystal told Daisy she was part of a "sex club" that her grandfather, Nevarez, "was in charge of," and she asked Daisy if she wanted to join. Daisy eventually said yes.

---

[1]    Statutory references are to the Penal Code.

2

When school resumed in August, Krystal introduced Daisy to Nevarez, who worked at the school as the girls' softball coach. Nevarez made clear to Daisy she should not say anything to anyone about the club.

On August 16, 2012 Nevarez drove Krystal and Daisy to his house after school. The three went to Nevarez's bedroom, where he told them to take off their clothes. Nevarez had sexual intercourse with both girls and directed them to give him a "blow job," all while both girls were present. Approximately once a week for the next four months, Nevarez drove Krystal and Daisy to his house after school and had oral sex and sexual intercourse with them. He repeatedly told Daisy that she could not tell anyone about the sex club and that, if she did, he and Krystal would say she was lying. Krystal confirmed to Daisy she would deny anything ever happened. The last day Daisy had sex with Nevarez was December 14, 2012.

In early March 2013 Daisy's sister discovered an entry Daisy had made on a personal electronic device: "August 16, 2012 is the day I lost my . . . ." She also saw on the device several messages from Nevarez. When Daisy's sister confronted her about this discovery, Daisy told her about the four months of Nevarez's sexual activity with her. Daisy's sister took her to the police station, where Daisy reported what Nevarez had done to her. She also reported that Nevarez had engaged in sexual activity with Krystal.

B.     *The Police Investigate Nevarez, Who Pleads No Contest in 2013 to Sexually Abusing Daisy*

Detective Eliott Uribe investigated Daisy's report. He interviewed Nevarez, who at first denied any inappropriate behavior with Daisy. After a polygraph test, however, Nevarez changed his story. Although he continued to deny he ever had

3

sexual intercourse with Daisy, he admitted he kissed her four or five times on the lips and on three or four occasions "grabbed her ass." He also admitted that "he allowed Daisy to rub his erect penis" and that "there were times when he would rub his erect penis against Daisy." He admitted, too, that Daisy "excited" him and that he pictured himself "doing shit to Daisy."

Nevarez denied anything inappropriate had ever occurred between him and Krystal. Krystal also told Detective Uribe that Nevarez had never touched her "in any bad way," and Detective Uribe concluded he did not need to continue questioning her because "she was so adamant that nothing had happened." Krystal also denied knowing about anything inappropriate between Nevarez and Daisy. When Detective Uribe interviewed Krystal's mother (Nevarez's stepdaughter), she stated that she and Nevarez had a "good" "relationship," that she had never seen him behave inappropriately with Krystal or anyone else, and that she felt "safe having Krystal around [him]."

Based on his sexual activity with Daisy, the People charged Nevarez with four counts of committing a lewd or lascivious act on a child under the age of 14 years (§ 288, subd. (a)). In September 2013 Nevarez pleaded no contest to one of those counts, and the court sentenced him to six years in prison.

C.    *The People Charge Nevarez in 2018 with Sexually Abusing Krystal*

In November 2016, 17-year-old Krystal told her mother "she was raped several times by" Nevarez. She explained that, because of a recently successful ballot proposition giving sexual offenders the opportunity for early release, she was "scared" that Nevarez "was going to get out of jail early" and that he would "do the same things he did." Krystal's mother took her to the police station, where Krystal told the police Nevarez molested her from

4

the time she was nine years old to the time she was 13. She estimated Nevarez had sexual intercourse with her "over one hundred times" during that period. She also described how Nevarez had pressed her, when she was 13, to have Daisy join "the club."

In March 2018 the People charged Nevarez with various crimes arising out of his sexual abuse of Krystal: two counts (1 and 2) of having sexual intercourse or sodomy with a child 10 years old or younger (§ 288.7, subd. (a)) during the period August 15, 2008 to August 14, 2010; two counts (3 and 4) of orally copulating with or sexual penetrating a child 10 years old or younger (§ 288.7, subd. (b)) during the period August 15, 2008 to August 14, 2010; one count (5) of continuous sexual abuse of a child under the age of 14 years (§ 288.5, subd. (a)) during the period August 15, 2010 to August 14, 2012; and one count (6) of committing a lewd or lascivious act on a child under the age of 14 years (§ 288, subd. (a)) during the period August 15, 2012 to August 14, 2013. In connection with counts 5 and 6 the People alleged Nevarez was previously convicted of a qualifying offense under sections 667.61 and 667.71; namely, his 2013 conviction for sexually abusing Daisy.

### D. *Nevarez Unsuccessfully Moves To Dismiss the 2018 Charges, and the Trial Court Convicts Him*

Before trial Nevarez filed a motion to dismiss the charges on the ground they came within the prohibition against multiple prosecutions under section 654 and *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*). Nevarez argued, "The incidences alleged in both cases [(the charges that stemmed from the abuse of Krystal and the charges that stemmed from the abuse of Daisy)] involve[d] basically the same time period and took place when all 3 people were present at the same time, while engaging

5

in group sexual activity." Nevarez argued that Daisy was a credible, percipient witness who could have supplied the evidence necessary to support charges against him in 2013 for the alleged abuse of Krystal. He also argued that in 2013 the People did not diligently investigate the alleged abuse of Krystal.

At a hearing on the motion, the prosecutor stated that she was the filing deputy when the People brought charges against Nevarez in 2013 and that there was not enough evidence at that time to prove charges relating to Krystal beyond a reasonable doubt. She explained that Krystal "flat out denied anything ever happened to her" and that Nevarez denied any wrongdoing relating to Krystal, whereas he admitted to criminal conduct with Daisy. The prosecutor argued that "the majority of the conduct charged involving Krystal stems from behavior that nobody ever knew about until Krystal came to report to the police once [Nevarez] was already incarcerated in prison."

The trial court denied the motion, ruling *Kellett* did not bar the People from prosecuting the current charges against Nevarez. The court distinguished *Kellett*, observing it involved "two separate prosecutions for possession of the same gun, [whereas] this case involves separate and distinct victims, separate times and different locations." In addition, responding to the People's argument that, despite acting with due diligence, they were unable to discover the evidence necessary to sustain a conviction for Nevarez's offenses against Krystal until she came forward in 2016, the court agreed that "the fact that law enforcement may have suspected that the defendant victimized Krystal does not mean that the current prosecution is barred by *Kellett*." The court found that "the People did investigate whether or not Krystal was a victim. They confronted her. They asked her. She denied it. They confronted [Nevarez] [and] asked him. He denied it."

6

After a court trial, the trial court found Nevarez guilty on all counts and found true the allegations he was previously convicted of a qualifying offense under sections 667.61 and 667.71. The court sentenced Nevarez to an aggregate prison term of 90 years to life as follows: consecutive terms of 25 years to life on counts 1 and 2; a consecutive term of 15 years to life on count 3; a concurrent term of 15 years to life on count 4; a consecutive term of 25 years to life on count 5 under the one strike law, plus a term of 25 years to life under the Habitual Sexual Offender law, the latter imposed and stayed under section 654; and a concurrent term of 25 years to life on count 6 under the one strike law, plus a term of 25 years to life under the Habitual Sexual Offender law, the latter imposed and stayed under section 654. Nevarez timely appealed.

## DISCUSSION

A.     *The Trial Court Did Not Err in Denying Nevarez's Motion To Dismiss the Charges*

Nevarez contends the trial court erred in denying his motion to dismiss the charges in this case because the rule against multiple prosecutions stated in *Kellett, supra*, 63 Cal.2d 822 precluded the People from bringing the charges. The rule against multiple prosecutions did not apply, however, because the "unavailable evidence" exception applied.

1.     *Applicable Law and Standard of Review*

Section 654, subdivision (a), provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An

7

acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."  (See *People v. Goolsby* (2015) 62 Cal.4th 360, 365-366; *People v. Valli* (2010) 187 Cal.App.4th 786, 794.)  "This provision thus bars multiple prosecutions for the same act or omission where the defendant has already been tried and acquitted, or convicted and sentenced." (*People v. Davis* (2005) 36 Cal.4th 510, 557 (*Davis*); accord, *People v. Linville* (2018) 27 Cal.App.5th 919, 928.)

In *Kellett, supra,* 63 Cal.2d 822 the Supreme Court addressed section 654's bar on multiple prosecutions and held: "When . . . the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause.  Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett*, at p. 827; accord, *People v. Goolsby, supra,* 62 Cal.4th at p. 366; *Davis, supra,* 36 Cal.4th at p. 557.)  The Supreme Court pointed out that, unlike section 654's rule against multiple punishment, which "does not apply when a single act of violence causes injury to several persons" (*Kellett*, at p. 825), the rule against multiple prosecution applies even to offenses against multiple victims:  "When there is a course of conduct involving several physical acts, the actor's intent or objective and the number of victims involved, which are crucial in determining the permissible punishment, may be immaterial when successive prosecutions are attempted."  (*Id.* at p. 827.)

The Supreme Court has recognized, however, that "[t]he *Kellett* rule applies only where 'the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part.'"  (*People v. Valli, supra,*

8

187 Cal.App.4th at p. 796.)  Thus, there is "an exception to the multiple-prosecution bar where the prosecutor ""is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.""'" (*Davis*, *supra*, 36 Cal.4th at p. 558.)  Under this "'unavailable evidence' exception" (*People v. Spicer* (2015) 235 Cal.App.4th 1359, 1377 (*Spicer*)), "section 654 will not bar a later prosecution when the government, despite reasonable efforts, has been unable to discover the facts necessary to sustain a conviction on the more serious crime.  [Citation.]  But this exception applies only when the government 'acted with due diligence at the outset but was unable to discover the additional facts necessary to sustain the greater charge.'" (*Davis*, at p. 558.) "[T]he prosecution first possesses 'facts necessary to sustain [the] charge' when it secures evidence supporting the objectively reasonable belief that it "'will be able to promptly establish guilt beyond a reasonable doubt.""'" (*Spicer*, at p. 1377; see *id.* at p. 1376 ["the prosecution's having possessed facts raising a suspicion of 'foul play' prior to the defendants' initial convictions did not bar the application of the exception"].)

"We review de novo the legal question of whether Section 654 applies." (*People v. Ochoa* (2016) 248 Cal.App.4th 15, 29.)  "To the extent appellant challenges the court's determinations of law regarding the application of the 'unavailable evidence' exception, we examine those determinations de novo.  [Citation.]  To the extent appellant challenges the court's factual determinations relating to the exception, we review those determinations for the existence of substantial evidence." (*Spicer*, *supra*, 235 Cal.App.4th at p. 1375; see *Ochoa*, at p. 29 ["We review factual determinations under the deferential substantial evidence test, viewing the evidence in the

9

light most favorable to the prosecution."].) "Whether the government exercised due diligence is a question of fact" we review for substantial evidence. (*Davis*, *supra*, 36 Cal.4th at p. 558.)

### 2.  *The Unavailable Evidence Exception Applied*

As Nevarez recognizes, the trial court ruled the unavailable evidence exception applied based on the court's finding that in 2013, despite exercising due diligence, the People did not have the evidence necessary to sustain charges against Nevarez for his sexual abuse of Krystal.  Substantial evidence supported that finding.  In 2013 the People had Daisy's report that Nevarez had engaged in sexual activity with her and Krystal.  But whereas Nevarez's admission he inappropriately touched Daisy and fantasized about having sex with her corroborated Daisy's report of his sexual activity with her, the prosecution had no corroborating evidence Nevarez engaged in sexual activity with Krystal.  In fact, both Nevarez and Krystal unequivocally denied the latter, and Krystal's mother further vouched for Nevarez.  Nor, unlike Daisy, had Krystal documented her sexual activity with Nevarez.  This lack of corroborating evidence, particularly given the consistency of contrary evidence, supported the trial court's finding that in 2013 the People did not have evidence to support an objectively reasonable belief they would promptly be able to establish Nevarez was guilty beyond a reasonable doubt of sexually abusing Krystal.  (See *Spicer*, *supra*, 235 Cal.App.4th at p. 1374 [""'[p]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt'""].)

Nevarez suggests the People did not exercise due diligence in 2013 when they investigated Daisy's assertion he engaged in

10

sexual activity with Krystal.  But he does not specify what more the People should have done.  In any event, substantial evidence supported the trial court's finding the People exercised due diligence.  In 2013 Detective Uribe interviewed Krystal to investigate Daisy's report, and because Krystal so adamantly denied Nevarez had done nothing inappropriate to her, Uribe concluded he did not "need to go and continue to ask her over and over and over again."  The detective also concluded it was not necessary to refer Krystal for a forensic interview,[2] something he would have done if "at any point" he felt she was "uncomfortable" talking to him.  Detective Uribe also interviewed Krystal's mother, who did not point him to any evidence of abuse, but instead provided evidence of Nevarez's good character.  This evidence of "ordinary diligence" in the People's 2013 investigation supported the trial court's finding.  (*Spicer*, *supra*, 235 Cal.App.4th at p. 1376.)  The trial court did not err in denying Nevarez's motion to dismiss the charges in this case based on the unavailable evidence exception.

     B.     *The Trial Court Erred in Sentencing Nevarez on Count 5 Under the One Strike Law and the Habitual Sexual Offender Law*

Nevarez contends the trial court erred in sentencing him on count 5 under the one strike law and the Habitual Sexual Offender law, both of which provide for sentences of 25 years to life where a defendant convicted of a qualifying sexual offense has been previously convicted of another qualifying sexual offense.  (See §§ 667.61, subds. (a), (d)(1), 667.71, subds. (a)-(b).)

---

[2]    Detective Uribe explained that a forensic interview is where the police "take a minor to a facility that has a forensic nurse and they will interview and record [it]."

Pointing out that the People in count 5 charged him for conduct occurring between August 15, 2010 and August 14, 2012 and that his September 2013 conviction was for conduct occurring between August 16, 2012 and December 14, 2012, Nevarez argues the one strike law and Habitual Sexual Offender law did not apply because he committed the offense for which he was previously convicted after he committed the offense charged in count 5. The People do not dispute Nevarez's chronology, but disagree with his interpretation of the statutes. We agree with Nevarez the statutes did not apply.

1.    *Applicable Law and Standard of Review*

"'In construing a statute, our task is to determine the Legislature's intent and purpose for the enactment. [Citation.] We look first to the plain meaning of the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity in the statutory language, its plain meaning controls; we presume the Legislature meant what it said. [Citation.] "However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute."'" (*People v. Yartz* (2005) 37 Cal.4th 529, 537-538; see *People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) "Statutory interpretation is '"an issue of law, which we review de novo."'" (*People v. Wilson* (2020) 53 Cal.App.5th 42, 47.)

12

2.    *The One Strike Law Did Not Apply*

Section 667.61, subdivision (a), provides in relevant part that "any person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) . . . shall be punished by imprisonment in the state prison for 25 years to life."  Among the offenses subdivision (c) specifies are "[l]ewd or lascivious act, in violation of subdivision (b) of Section 288," and "[c]ontinuous sexual abuse of a child, in violation of Section 288.5."  (§ 667.61, subd. (c)(4), (9).)  Among the circumstances subdivision (d) specifies is the "defendant has been previously convicted of an offense specified in subdivision (c)."  (§ 667.61, subd. (d)(1).)

Nevarez does not dispute that the offense for which the trial court convicted him in count 5 (continuous sexual abuse of Krystal) and the offense for which he was convicted in 2013 (committing a lewd or lascivious act against Daisy) are qualifying offenses under section 667.61, subdivision (c).  But he contends the 25-years-to-life sentence required by section 667.61, subdivision (a), did not apply to count 5 "[b]ecause the underlying misconduct resulting in [his] prior conviction occurred *subsequent* to the conduct supporting the trial court's verdicts as to count 5." In support of his contention, Nevarez cites *People v. Huynh* (2014) 227 Cal.App.4th 1210 (*Huynh*), which held the phrase "previously convicted" in the circumstance described in subdivision (d)(1) means "a defendant's qualifying conviction must chronologically precede the currently charged felony."[3] (*Huynh*, at p. 1215.)  The People concede that *Huynh*, if correctly

---

[3]    Nevarez does not contend *Huynh*, *supra*, 227 Cal.App.4th 1210 requires reversal of the one strike sentence on count 6 or challenge his sentence on count 6 on any other ground.

13

decided, would require reversal of the one strike, 25-years-to-life sentence on count 5, but they argue *Huynh* was wrongly decided. We agree with the result in *Huynh*, although not all of the *Huynh* court's analysis.

In *Huynh*, *supra*, 227 Cal.App.4th 1210 the People argued that the language of section 667.61, subdivisions (a) and (d)(1), unambiguously "requires only a prior conviction and not a prior conviction that *preceded* the currently charged offense." (*Huynh*, at p. 1214.) The People argued that this interpretation was consistent with the Legislative intent because section 667.61 "is not an antirecidivist statute but instead an alternative sentencing scheme designed to separate an incurable class of people from society." (*Huynh*, at p. 1214.) The court in *Huynh* agreed the statutory language was unambiguous, but disagreed with the People about what that language unambiguously meant. The court concluded that, giving the words of the statute their usual and ordinary meaning, "[t]he word 'previously' [in subdivision (d)(1)] can only be interpreted to mean a defendant's qualifying conviction must chronologically precede the currently charged felony" and that "the order of the commission of the offenses is material." (*Huynh*, at p. 1215.) The court stated its conclusion was "buttressed by extrinsic aids." (*Ibid.*) In particular, the court cited cases indicating that, although the one strike law "cannot be classified wholly as an antirecidivism statute, section 667.61, subdivision (d)(1), certainly can be classified as an antirecidivism subdivision." (*Huynh*, at p. 1216, citing *People v. Acosta* (2002) 29 Cal.4th 105, 127 and *People v. DeSimone* (1998) 62 Cal.App.4th 693, 697.) The court in *Huynh* stated: "Because section 667.61, subdivision (d)(1), is an antirecidivism subdivision that exposes a defendant to 25 years

to life for a 'previous conviction,' we conclude that to impose increased punishment for recidivism requires that the 'prior conviction' chronologically precede the currently charged offense." (*Huynh*, at p. 1216.)

We are not certain we agree with the court in *Huynh* that the language of section 667.61 is unambiguous. There does seem to be some ambiguity in subdivision (a) of the statute, which refers to "any person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d)." Does the phrase "under one or more of the circumstances" relate to the verb "is convicted," or does it further modify the phrase "an offense specified in subdivision (c)"? When considered in relation to subdivision (d)(1), the question becomes: Is it the present *conviction* that must occur under the circumstance that the defendant was previously convicted of a qualifying offense, or is it the present qualifying *offense* that must occur under the circumstance that the defendant was previously convicted of a qualifying offense? Considering the purpose of section 667.61, subdivision (d)(1), as well as other extrinsic aids, we agree with the court in *Huynh* that the latter is the correct interpretation.

As the court in *Huynh* observed, and contrary to the People's insistence here, although section 667.61 is not entirely an antirecidivist statute, subdivision (d)(1) is an antirecidivist provision. As the Supreme Court explained in *People v. Acosta, supra*, 29 Cal.4th 105, where it examined the "separate objectives" of the three strikes law[4] and the one strike law: "The

---

[4] The three strikes law (§ 667, subds. (b)-(i)) "provides for enhanced sentencing for recidivist felons." (*People v. Hammer* (2003) 30 Cal.4th 756, 766.)

15

'unambiguous purpose' of the Three Strikes law 'is to provide greater punishment for recidivists. [Citation.]" [Citation.] The purpose of the One Strike law is to provide life sentences for aggravated sex offenders, even if they do not have prior convictions." (*Acosta,* at p. 127.) But as the Supreme Court stated, in examining more specifically the individual provisions of the one strike law: "None of the seven circumstances that trigger the 15-year minimum term of the One Strike law's life sentence relate to recidivism; they all relate to the manner in which the defendant committed the specified sex offense. [Citations.] As to the 25-year minimum term, three of the four triggering circumstances similarly relate to the manner in which the defendant committed the specified sex offense; only one [i.e., the one in subdivision (d)(1)] relates to recidivism."[5] (*Acosta,* at

---

[5] Although the Supreme Court did not refer explicitly to "subdivision (d)(1)," the reference is clear from the context. At that time section 667.61, subdivision (d), identified four (now seven) "triggering circumstances" for the 25-years-to-life term: "(1) The defendant has been previously convicted of an offense specified in subdivision (c), including an offense committed in another jurisdiction that includes all of the elements of an offense specified in subdivision (c)"; "(2) The defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c)"; (3) The defendant inflicted aggravated mayhem or torture on the victim or another person in the commission of the present offense in violation of Section 205 or 206"; and "(4) The defendant committed the present offense during the commission of a burglary, as defined in subdivision (a) of Section 460, with intent to commit an offense specified in subdivision (c)." (Former § 667.61, as amended by Stats. 1998, ch. 936, § 9.)

16

p. 127; see *People v. Hammer* (2003) 30 Cal.4th 756, 768 [referring to "those aspects of the One Strike law that . . . address the problem of recidivism" when construing section 667.61, subdivision (d)(1)]; *People v. DeSimone, supra,* 62 Cal.App.4th at p. 697 ["One of the circumstances listed in the One Strike law [i.e., subdivision (d)(1)] relates not to the method of committing the present offense, but to the defendant's status as a recidivist."].)

The court in *Huynh* correctly concluded that, to serve the provision's antirecidivist purpose, the previous conviction referred to in section 667.61, subdivision (d)(1), must "chronologically precede the currently charged offense." (*Huynh, supra,* 227 Cal.App.4th at p. 1216.) This is because the "presumed rationale" of laws providing harsher penalties for recidivists "is that an offender undeterred by his *prior brushes with the law* deserves more severe criminal treatment." (*People v. Balderas* (1985) 41 Cal.3d 144, 201; see *In re Coley* (2012) 55 Cal.4th 524, 531 ["Petitioner's conduct . . . demonstrated that, despite the significant punishment petitioner had incurred as a result of his prior serious offenses, he was still intentionally unwilling to comply with an important legal obligation, and thus his triggering criminal conduct bore both a rational and substantial relationship to the antirecidivist purposes of the Three Strikes law."]; *People v. Rojas* (1988) 206 Cal.App.3d 795, 799 ["it is difficult to envision how one can 'relapse' into criminal behavior within the meaning of an habitual criminal statute before one's prior conduct has been adjudicated as criminal and resulted in punishment"]; *People v. Diaz* (1966) 245 Cal.App.2d 74, 77, fn. 1 ["the reason for the infliction of severer punishment for a repetition of offenses is not so much

17

that defendant has sinned more than once as that he is deemed incorrigible when he persists in violations of the law after conviction of previous infractions" (italics omitted)].)

Our interpretation of section 667.61 is further supported by the Supreme Court's decision in *People v. Hammer, supra,* 30 Cal.4th 756. Although the Supreme Court in *Hammer* did not decide the precise issue in this case, the Supreme Court was construing aspects of the one strike law, which the Supreme Court described as mandating "a sentence of 25 years to life when a defendant commits a qualifying offense after he or she 'has been previously convicted of an offense specified in subdivision (c) . . . .'" (*Hammer,* at p. 762, italics omitted.) The Supreme Court described the issue in that case as, in relevant part, "whether defendant committed [his] qualifying present offenses under circumstances specified in the One Strike law . . . ." (*Ibid.*) These statements suggest the phrase "under one or more of the circumstances" modifies the phrase "an offense specified in subdivision (c)."

In addition, "[t]he Legislature is presumed to be aware of judicial interpretations of a statute," and "[i]f the Legislature amends or reenacts the statute without changing the interpretation placed on that statute by the courts, 'the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute.'" (*People v. Brown* (2016) 247 Cal.App.4th 1430, 1436; see *People v. Bouzas* (1991) 53 Cal.3d 467, 475.) At the conclusion of its opinion in *Huynh, supra,* 227 Cal.App.4th 1210, the court "invite[d] the Legislature to . . . amend section 667.61, subdivision (d)(1), to allow a 'previous conviction' that occurred subsequent to the current charged offenses if that is what the Legislature intended."

18

(*Huynh,* at p. 1218.)  The Legislature has since amended section 667.61, making only minor changes that do not affect the *Huynh* court's interpretation of the statute.  (See Stats. 2018, ch. 423, § 68.)  We therefore presume the interpretation the court in *Huynh* adopted correctly reflects the Legislature's intent.

Citing *People v. Rogers* (2013) 57 Cal.4th 296, the People argue section 667.61, subdivision (d)(1), does not require the previous conviction to precede the commission of the current offense.  *Rogers*, however, is distinguishable.  In *Rogers* the Supreme Court considered language in section 190.2, subdivision (a)(2), that mandates a sentence of death or life without the possibility of parole for a defendant convicted of first degree murder if the defendant "'was *convicted previously* of murder in the first or second degree.'"  (*Rogers*, at p. 343.)  The Supreme Court, relying on the "'unambiguous language and purpose of'" the statute, held the "'order of the commission of the homicides is immaterial.'"  (*Ibid.*)  The Supreme Court observed that section 190.2, subdivision (a)(2), "'refers simply and unequivocally to previous convictions.'"  (*Rogers,* at p. 343.)  The Supreme Court added:  "'The function of section 190.2(a)(2) is also clear—to circumscribe, as the Eighth Amendment requires [citation], the classes of persons who may properly be subject to the death penalty. . . .  Unlike recidivism statutes, . . . section 190.2(a)(2) is directed neither to deterring misconduct nor to fostering rehabilitation.'"  (*Rogers*, at p. 343.)  Because section 667.61, subdivision (d)(1), unlike section 190.2, subdivision (a)(2), is an antirecidivism provision, the holding in *Rogers* is inapplicable.

19

### 3. *The Habitual Sexual Offender Law Did Not Apply*

Section 667.71, subdivision (b), provides that "[a] habitual sexual offender shall be punished by imprisonment in the state prison for 25 years to life." Section 667.71, subdivision (a), defines a "habitual sexual offender" as "a person who has been previously convicted of one or more of the offenses specified in subdivision (c) and who is convicted in the present proceeding of one of those offenses." The list of offenses in subdivision (c) includes "[c]ontinuous sexual abuse of a child, in violation of Section 288.5," and committing a "[l]ewd or lascivious act, in violation of subdivision (a) . . . of Section 288." (§ 667.71, subd. (c)(4), (6).)

Similar to his argument regarding the one strike law, Nevarez contends the 25-years-to-life sentence under the Habitual Sexual Offender law did not apply to count 5 because, properly interpreted, the statute's definition of a habitual sexual offender requires that the previous conviction for a qualifying offense occur before the commission of the present qualifying offense. The People do not dispute Nevarez's interpretation of the statute. In fact, the People do not address it, apparently, as the People state, "[b]ecause appellant's sentence under the One Strike Law is sound, and because the trial court stayed any punishment under the Habitual Sex Offender Law." Nevarez's interpretation of the statute is correct.

Although ""'[w]e begin by examining the statute's words, giving them a plain and commonsense meaning,'"" we ""'do not . . . consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .

20

[Citation.]' [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute . . . .'"""" (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537.)

The People concede that, when the Legislature enacted the Habitual Sexual Offender law, the statute "was specifically aimed at 'repeat sex offenders' and applied to those who had previously served a prison term for specified sex offenses." Indeed, the Supreme Court has stated that, in contrast to the one strike law, the Habitual Sexual Offender law "is designed to address *solely* recidivism." (*People v. Hammer*, *supra*, 30 Cal.4th at p. 768; see *People v. Murphy* (2001) 25 Cal.4th 136, 155 ["as defendant points out, 'the purpose of section 667.71 is *not* to punish especially aggravated instances of a particular crime,' but to 'serve[ ] the same purpose as the "Three Strikes" law, which is to punish recidivism'"]; *People v. McQueen* (2008) 160 Cal.App.4th 27, 38, fn. 14 [section 667.71 is "concerned with 'the fact of defendant's recidivism'" (italics omitted)].)

Given that the purpose of section 667.71 is to punish recidivism, the definition of a habitual sexual offender in section 667.71 requires that the defendant's previous conviction for a qualifying offense occur before the commission of the present qualifying offense. (See *People v. Hammer*, *supra*, 30 Cal.4th at p. 766 ["the Habitual Sexual Offender Law . . . is designed to target repeat sexual offenders, by imposing a sentence of 25 years to life in prison on those who commit a specified offense . . . after having previously been convicted of a specified offense"]; *People v. Murphy*, *supra*, 25 Cal.4th at p. 155 [section 667.71 establishes an alternate and elevated penalty "when a recidivist defendant has served a prior term in a penal

institution for a listed offense"].)  The trial court therefore erred in sentencing Nevarez on count 5 under the Habitual Sexual Offender law.

## DISPOSITION

The convictions are affirmed.  The sentences on count 5 under sections 667.61 and 667.71 are vacated, and the trial court is directed to resentence Nevarez on all counts.[6]


SEGAL, J.

We concur:


PERLUSS, P. J.


FEUER, J.

---

[6] See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ("when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"); *People v. Bell* (2020) 48 Cal.App.5th 1, 24 (same).